John Leonard FEE
v.
UNITED STATES of America.
Civ. A. No. 1217(R).

United States District Court
W. D. Virginia,
Lynchburg Division.
Aug. 6, 1962.

R. Bruce Wiles, Lynchburg, Va. (court appointed), for petitioner John Leonard Fee.

Thomas B. Mason, Roanoke, Va., for the United States.

MICHIE, District Judge.

John Leonard Fee, an inmate of the Federal Penitentiary in Atlanta, filed a petition purporting to be a petition under § 2255 of Title 28 of the United States Code (28 U.S.C.A. § 2255) to vacate a sentence imposed upon him on October 12, 1953 in the United States District Court for the Western District of Virginia under the Mann Act and also under the Harrison Narcotic Act 18 U.S. C.A. § 2421 et seq.; 26 U.S.C.A. § 4701 et seq. He had previously been convicted under the Harrison Act in Mississippi. And he referred at the hearing to an early narcotics charge in Alabama under which, however, he appears to have been convicted of grand larceny rather than under the Harrison Act. Mr. Fee has fully served his time on the sentence so imposed on October 12 1953 but is now serving time in the penitentiary under a subsequent narcotics sentence imposed upon him by the United States District Court for the Southern District of West Virginia and must serve additional time as a third offender—a "three-time loser" as he picturesquely described himself in testifying. If the conviction in the Western District of Virginia were set aside the time he is now serving would be shortened.

While the remedy under Title 28 U.S.C.A. § 2255 is not available when the sentence sought to be set aside has been fully served, a petition thereunder may

be treated as an application for a writ of error coram nobis. Pledger v. U. S. (4th Cir. 1959), 272 F.2d 69, and U. S. v. Morgan (1954), 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248. Accordingly I will treat the petition as an application for a writ of error coram nobis.

In general the petition alleges that the sentence was invalid because the petitioner was ignorant of his rights (1) to the assistance of counsel, (2) to indictment by a grand jury and (3) to trial by a jury and was induced and duped into waiving his rights thereto by an F. B. I. agent and an Assistant United States Attorney who "promised him that if he would enter a plea of guilty to a non-existent narcotic charge, along with the valid charge for violation of 18 U.S.C. § 2421, that they would make arrangements for him to receive a probationary sentence instead of a prison sentence and that he would be placed in a United States Public Health Service Hospital for medical treatment for his illness instead of punishment in a penal institution." It also alleges that he was told that he could not be placed in a hospital for medical treatment for his narcotics difficulty unless he pleaded guilty to "the non-existent narcotic charge".

As the allegation of threats and a "bargain" between the prosecuting officers and the defendant, which it was alleged was not in fact carried out by the prosecuting officers and the court, seemed to warrant it, a hearing was held on the petition. At the hearing, however, the evidence from the petitioner himself developed quite a different state of facts from that alleged in the petition.

On October 5, 1953 Fee brought Thelma Fisher Parker from Lexington, Kentucky, to the Ponce de Leon Hotel in Roanoke, Virginia, and they both registered there. The girl engaged in prostitution and it seems that, though the officers had evidence of it the first night, they did not immediately make an arrest as they had some indication that she had been brought to Virginia by a man and wished to keep her under further surveillance. They continued to watch the room and Mr. Fee appeared and was arrested, charged under the Mann Act. There was apparently no mention of narcotics at that time. But on the following day the girl made a complete confession with details of her travels with Fee and said that she gave the money that she received from prostitution to Fee to buy narcotics, some of which he had brought and given her on the morning of the arrest. Both she and Fee were admittedly narcotics addicts.

If Mr. Fee's testimony at the most recent hearing is to be believed (and his testimony seemed quite candid and credible) he never quite realized that the officers had evidence of his involvement in the narcotics business. His story is that he told them that he wanted to be sent to the government hospital for narcotic addicts at Lexington, Kentucky, and they told him that they could not send him there unless he pleaded guilty to "the non-existent narcotics charge". But in fact there was a charge with respect to narcotics, if not in information form at that time at least in the intent of the officers and with evidence to prove it. And if not then in the form of an information it was subsequently put in that form. But according to Fee, in his anxiety to be sent to the hospital he agreed to plead guilty to the "non-existent" charge.

However this bare statement hardly reflects accurately Mr. Fee's position at the time of his trial as detailed in his evidence in the recent hearing on his petition. At the hearing he agreed that he was the moving spirit in trying to get into Lexington, that he was told he could only get into Lexington on a narcotics charge, that he wanted very much to go there and that the officers agreed that if he would plead guilty on both the Mann Act and the narcotics charges they would recommend to the court that the narcotics sentence be suspended, that he be sent to Lexington and that he would only have to serve the sentence under the Mann Act. Mr. Fee agreed at the hearing that what the officers said they would recommend was exactly what was done and that he

served no time under the narcotics charge though he was kept a brief period in the hospital in Lexington before being sent to Atlanta to serve his time under the Mann Act charge.

Court-appointed counsel for the petitioner contends that this agreement to plead guilty was not voluntary and further that the court did not comply with the provisions of Rule 11 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., which provides that the court shall not accept a plea of guilty "without first determining that the plea is made voluntarily with understanding of the nature of the charge" and further complains that such explanation of the nature of the charge as was made to the defendant in court on the day of the trial was conducted by the District Attorney instead of the Judge.

■ The Rule requires that the court must determine if the plea of guilty is made voluntarily with understanding of the nature of the charge. And the same is true of waivers of indictment and of the right to counsel. But if the defendant does understand the nature of the charge it is immaterial whether he acquires this knowledge through statements made to him by the District Attorney or by the Judge.

This defendant at the time of the trial in question had already had considerable experience as a criminal defendant. He was asked if he wished counsel and he replied in the negative. It is incredible that he did not understand that he was entitled to counsel. He was asked if he wished to waive indictment and plead guilty and he replied in the affirmative. All this took place after the District Attorney had advised him that he was charged with transporting Thelma Fisher Parker in interstate commerce from Lexington, Kentucky, to Roanoke, Virginia, "for the purpose of prostitution and other immoral purposes; and also, on October 7, 1953, of unlawfully dispensing narcotics".

■ It appears in fact that the plaintiff was himself the moving spirit in the disposition of the matter that was then made. And he testified in the most recent hearing that he felt that everyone connected with the court at the time of the original trial was his friend and was doing him a favor in entering into the arrangement that was entered into and carried out. In fact, in his testimony at the hearing on this petition, his only complaint was that he was not warned that pleading guilty to a second offense would have the effect of increasing the punishment if he was subsequently found guilty of a third offense. To the best of my knowledge it has never been suggested that the court or the District Attorney is under any duty to warn of such a possible result. They have a right to assume that the defendant will not be guilty of a subsequent offense. Court-appointed counsel for the defendant in the able brief he has filed does not suggest that there is any such duty. And as stated above, Mr. Fee in his testimony does not complain of any other unfairness or misconduct in the original trial, though as indicated above his counsel has contended (I think unsuccessfully) that the court did not make sure that the defendant was fully apprised of his rights and the charges against him.

That the defendant understood his situation quite thoroughly is best shown by the colloquy between the court and the defendant at the 1953 trial at the conclusion of which the sentence sought to be set aside was imposed. This ran as follows:

"THE COURT: How long have you been an addict?

"THE DEFENDANT: Well, sir, I got hurt in 1943 and I quit a couple of times myself, and I went to the Veterans Hospital in Lexington and got off of it, and now this last time I have been taking it about nine months or ten months right along.

"THE COURT: What is the condition of your health?

"THE DEFENDANT: I have T.B. of the kidney, sir.

"THE COURT: How long have you had that?

"THE DEFENDANT: It developed from my lungs. I had T.B. of the lungs and it was arrested, and it developed in my kidneys. I have had it since July, 1943.

"THE COURT: Have you ever had any treatment for T.B.?

"THE DEFENDANT: Yes, sir.

"THE COURT: Where?

"THE DEFENDANT: At Lexington Hospital, and at Kennedy General at Memphis, Tennessee. My lungs are arrested but my kidneys aren't.

"THE COURT: You ought to go to Lexington now, shouldn't you?

"THE DEFENDANT: Yes, sir.

"THE COURT: For how long?

"THE DEFENDANT: I would like to go until I am cured, sir. I would appreciate getting well. If I can get well, I would be a different man altogether.

"MR. SETTLE [F.B.I. Agent]: He says he has been using from sixty to eighty of these tablets a day.

"THE COURT: ⅟₁₆ grain tablets?

"THE DEFENDANT: Yes, sir.

"THE COURT: What is the penalty provided in the statute?

"Mr. DAVIS [Assistant U. S. Attorney]: White slavery is five years.

"THE COURT: There isn't any chance of your getting well in less than a year.

"THE DEFENDANT: They have got what they call an estimated cure down there when they pronounce me cured. I would like to stay until they do pronounce me cured down there. And if it was possible I would appreciate your putting a sentence on me where I will have to go straight until I am cured but it would give me a chance.

"THE COURT: I think I should give you a sentence on the first count of three years, and if they cure you they can probate you in one, and five years probation on the second. What do you think of that?

"THE DEFENDANT: That is all right. Could you make it like this: Where you could sentence me for a cure and the probation to run after I am cured?

"THE COURT: There is no way for me to tell how long it will take to cure you, but they can parole you.

"THE DEFENDANT: It is estimated at one year.

"THE COURT: Under a three year sentence they can put you on parole any time.

"THE DEFENDANT: They couldn't parole me. I would have to do the whole three years.

"THE COURT: Why?

"THE DEFENDANT: Because when you are given three years in public health like that, you have to do the whole three years. But if you could give me a year and probation the rest of it, I would stay a year and then be on probation the rest of the time when I come out.

"THE COURT: I think I ought to give you more than a year, because they can grant you parole. I am going to give you two years on the first count which would permit them to put you on parole anytime after eight months and five years probation on the second from the date of his release, at the completion of the service of his sentence."

The first count was the Mann Act count and the second count was the narcotics count. As noted above the sentence on the narcotics count was merely for a period of probation.

It is obvious therefore that the defendant was fully apprised of his rights and was in fact the moving spirit in the disposition of his case. Despite the allegations of his petition the only real complaint that he made at the trial was that no one told him of the possible effect of the sentence in the event he should be convicted yet another time for the same type of offense. As above stated, there

was no obligation on anyone to apprise him of this fact.

 Petitioner's counsel relies heavily on Rule 11, above referred to, and on U. S. v. Lester, 2 Cir., 247 F.2d 496, and similar cases which hold that the duty of the court to determine that the prisoner fully understands his constitutional rights and voluntarily waives them and pleads guilty is not fulfilled by "a perfunctory examination conducted by the prosecutor". That must be admitted but the case at bar is distinguished by the facts that (1) the petitioner here had had a considerable previous experience in the Federal Courts so that he must have known of his constitutional rights and (2) the result of the trial was exactly what the prisoner wanted and was asking for.

The petition must therefore be denied.